Carlos **FERREIRA**, Petitioner,

v.

**UNITED STATES of America and David Kelly, United States Attorney for the Southern District of New York, Respondents.**

No. M–18–303(VM).

United States District Court,
S.D. New York.

Jan. 27, 2005.

---

### DECISION AND ORDER

MARRERO, District Judge.

Carlos Ferreira ("Ferreira") filed a Motion under Federal Rule of Criminal Procedure 41(g) ("Rule 41(g)") for Return of Property, by way of an Order to Show Cause and Affirmation, against the United States Attorney's Office for the Southern District of New York and David Kelly, United States Attorney for the Southern District of New York (collectively, the "Government"). The Government responded to Ferreira's Motion by letter brief on January 13, 2005. Ferreira submitted a reply to the Government's letter on January 20, 2005. On January 21, 2005, the Court heard oral argument on the matter. For the reasons set forth in the statement made by the Court on the record at the January 21, 2005 Hearing, as further elaborated upon in the Statement of the Court which is attached hereto and incorporated herein, the Court denies Ferreira's Motion in part due to mootness and in part on the merits. Accordingly, it is hereby

**ORDERED** that Carlos Ferreira's Motion for Return of Property under Federal Rule of Criminal Procedure 41(g) is DENIED.

**SO ORDERED.**

### *Statement of the Court Regarding Carlos Ferreira's Motion for Return of Property*

Carlos Ferreira ("Ferreira") filed a Motion under Federal Rule of Criminal Procedure 41(g) ("Rule 41(g)") for Return of Property, by way of an Order to Show Cause and Affirmation, against the United States Attorney's Office for the Southern District of New York and David Kelly, United States Attorney for the Southern District of New York (collectively, the "Government"). (Ferreira's Order to Show Cause and accompanying Affirmation of Ernest H. Hammer ("Hammer Aff."), dated January 10, 2005.) The facts underlying this action are recited in a previous opinion by this Court, *Ferreira v. United States*, 350 F.Supp.2d 550 (S.D.N.Y.2004).

In the Affirmation are listed several categories of items that Hammer, attorney

for Ferreira, claims should be returned to Ferreira. First, Hammer demands the return of the tapes that Ferreira made of the telephone calls between himself and Detective Yanko Rosado ("Rosado"), and other in-person recordings made by Ferreira of communications that he had with Rosado, including a tape made on the morning of June 7, 2000 in which Rosado allegedly stated that he wanted to see Ferreira. (Hammer Aff. ¶¶ 3, 6.) Second, Hammer demands the return of electronic recordings made by Ferreira's wife, Lilliana Ferreira. (*Id.* ¶ 3.) Third, Hammer requests the return of "electronic telephonic communications" made at the offices of the Government by Ferreira of conversations that Ferreira had with Rosado. (*Id.* ¶ 4.) Fourth, Hammer requests the audio and video recordings made on June 6, 2000 on the video and audio recording devices placed in Ferreira's car by the New York City Police Department. (*Id.* ¶ 5.) Finally, Hammer asks for copies of the allegedly stolen IRS and personal checks that Ferreira claims Rosado gave to him to cash. (*Id.* ¶ 8.) Hammer admits that these checks "did not become the property of Carlos Ferreira during his brief possession of them." (*Id.*)

The Government replied to Ferreira's Motion in a letter to the Court. (Letter from the Government to the Court, dated January 13, 2005 ("Gov't Letter").) In that letter, the Government states that it "intends to turn over to [counsel for Ferreira] some of the materials he seeks in his motion. Specifically, the Government is preparing to provide Mr. Hammer with tapes made by Carlos Ferreira on his own accord, outside the presence of and without the supervision of Government investigators, which were later turned over to the Government." (*Id.* at 1.) The Government opposes the return under Rule 41(g) of any other materials because (1) the return of such materials falls outside the scope of Rule 41(g), and (2) such materials are protected by the privilege concerning criminal investigative files. (*Id.* at 1–2.)

Ferreira responded to the Government's Letter that he is not seeking to recover any materials that would be subject to such a privilege. (Letter from Hammer to the Court, dated January 20, 2005 ("Ferreira Letter"), at 1–2.) Ferreira also distinguishes *Bova v. United States,* 460 F.2d 404 (2d Cir.1972), on the grounds that, although certain of the recordings requested in the Motion were made on the Government's recording devices, Ferreira authorized the Government to tape his conversations, may have in fact operated the recording device, and was only using the Government's devices "as a convenience." (Ferreira Letter at 3.) Finally, Ferreira asserts that, due to the fact that the Government's investigation into Rosado has been terminated, the Government has the evidentiary burden for the Rule 41(g) motion, citing *United States v. Chambers,* 192 F.3d 374 (3d Cir.1999).

## I. *Statement of Law*

### A. RULE 41(G)

Rule 41(g) provides that, on a Motion to Return Property, "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." Fed. R.Crim.P. 41(g). The Advisory Committee notes to the 1989 amendment of the Rule state that, "[a]s amended, Rule 41(e)[, now 41(g),] provides that an aggrieved person may seek return of property that has been unlawfully seized, and a person whose property has been lawfully seized may seek return of property when aggrieved by

the Government's continued possession of it." Fed.R.Crim.P. 41 advisory committee's note (1989).

■ "To prevail on a Rule 41(e) [, now 41(g),] motion, a criminal defendant must demonstrate that (1) he is entitled to lawful possession of the seized property; (2) the property is not contraband; and (3) either the seizure was illegal or the government's need for the property as evidence has ended." *United States v. Van Cauwenberghe*, 827 F.2d 424, 433 (9th Cir. 1987); *see United States v. Wright*, 610 F.2d 930, 939 (D.C.Cir.1979) ("The whole thrust of the cases that we have cited is that when property is seized from a person, the court must return it to that person when it is no longer needed by the government."). "The movant is required to show that he is entitled to lawful possession of the property." 3A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 673 (3d ed.2004). Possession by a person is "prima facie evidence of some kind of rightful ownership or title." *Northern Pac. R.R. Co. v. Lewis*, 162 U.S. 366, 372, 16 S.Ct. 831, 40 L.Ed. 1002 (1896). The movant is not entitled to the return of property under Rule 41(g) to which he cannot claim lawful possession. *See Van Cauwenberghe*, 827 F.2d at 433–34 ("Absent a showing that the individual requesting return of property under Rule 41(e) [, now 41(g),] is entitled to its lawful possession, the property may not be released to him.").

Precedent in the Second Circuit has drawn clear lines concerning the availability of tapes of telephone conversations for return under Rule 41(g): "Telephone conversations are not 'property' in the ordinary meaning of language, nor is there any effective method for their 'return.' It is obviously impossible to excise and surren-

der to the appellants the memories of the agents who conducted the interceptions, and *the tapes and logs, as tangible items, are the Government's property, not the appellants'.*" *Bova v. United States*, 460 F.2d 404, 407 (2d Cir.1972) (emphasis added); *see also In re Vigorito*, 499 F.2d 1351, 1354–55 (2d Cir.1974) ("[T]elephone conversations are not 'property' as that term is used in Rule 41(e) [, which is now Rule 41(g) ]."). The movants in *Bova* had been recorded by the government on phones that were being tapped under authorization from the District Court for the Western District of New York. *Bova*, 460 F.2d at 404; *see In re Vigorito*, 499 F.2d at 1352 (noting that defendants in the case were moving for the return of conversations that were "overheard pursuant to court-ordered electronic surveillance"). An issue remains in this Circuit, however, as to whether a movant might have a property interest in tapes of phone conversations that he himself created and then turned over to the government.

## B. MOOTNESS

■ "The mootness doctrine, which is mandated by the 'case or controversy' requirement in Article III of the United States Constitution, requires that federal courts may not adjudicate matters that no longer present an actual dispute between parties. *See Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477–78, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990). Thus, 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome,' *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969), a case is moot and the federal court is divested of jurisdiction over it, *see County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642

(1979). For example, when 'it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, [and] interim relief or events have completely and irrevocably eradicated the effects of the alleged violation,' the issue is moot. *Id.* (internal citations, quotations, and alterations omitted). 'The central question . . . is constant—whether decision of a once living dispute continues to be justified by a sufficient prospect that the decision will have an impact on the parties.' Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, 13A *Federal Practice & Procedure* § 3533 (2d ed.1984)." *Catanzano v. Wing*, 277 F.3d 99, 107 (2d Cir.2001). "[I]t is not enough that a dispute was very much alive when suit was filed. . . . The parties must continue to have a personal stake in the outcome of the lawsuit." *Knaust v. City of Kingston*, 157 F.3d 86, 88 (2d Cir.1998) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477–78, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990)).

## II. *Discussion*

As promised in its letter of January 13, 2005 and displayed before the Court at the January 21, 2005 Hearing, the Government turned over to Ferreira all of the tapes that he made and turned over to the Government. Ferreira's Rule 41(g)

Motion is now moot as to those materials. As to the other materials demanded in the Motion, this Court finds that they are not recoverable under Rule 41(g) and therefore denies Ferreira's Motion as to them.

Assuming that the Government in fact turned over all "tapes made by Carlos Ferreira on his own accord, outside the presence of and without the supervision of Government investigators, which were later turned over to the Government" to Ferreira, then it has turned over to him all of the property that he is entitled to under Rule 41(g). (*See* Gov't Letter at 1.) Under these circumstances, Ferreira's Rule 41(g) Motion as to those materials has been rendered moot and this Court no longer maintains jurisdiction over it. *Knaust* 157 F.3d at 88. Although there may have existed a claim under Rule 41(g) at the time Ferreira filed his Motion, at present there is no legally cognizable controversy between the parties under Rule 41(g)— Ferreira has recovered his personal property from the Government. Without a "live" controversy before it, the Court lacks jurisdiction over the matter. *Catanzano*, 277 F.3d at 107.

Under Rule 41(g), the property Ferreira can recover is only that over which he can establish a sufficient ownership or possessory interest; he cannot recover property of another or property that was never in his possession.[1] *See Van Cauwenberghe*, 827 F.2d at 433–34. The

---

1. Ferreira argues that the Government has the "evidentiary burden" for the Rule 41(g) Motion in this case because the criminal investigation of Rosado has been terminated. (Ferreira 1/20/05 Letter at 4.) Although the government has the burden in such circumstances to return the property of a criminal defendant unless "it has a legitimate reason to retain the property," *see Chambers*, 192 F.3d at 377, this burden-shifting rule does not excuse the defendant from showing as a preliminary matter that the property in question was in fact his to begin with. In *Chambers*, the property that the defendant sought the return of had been seized from him at the time of his arrest. *Id.* at 375. There was no question that the property was the defendant's; the issue was whether the government could show that it had "a cognizable claim of ownership or right to possession adverse to that of the movant." *Id.* at 377 (internal quotation marks omitted). In this case, Ferreira has failed to establish the threshold issue of ownership as to any of the material not already turned over by the Government. Therefore, the burden-shifting rule does not apply to this case.

property that Ferreira requests in the Motion that has not already been turned over by the Government, such as the alleged property of his wife or tapes that the Government itself made, cannot be recovered under the plain language of Rule 41(g). *See Bova,* 460 F.2d at 407 (holding that tapes made by the government are not the property of the person who was taped).[2] Furthermore, property that Ferreira admits having no possessory interest in, such as the allegedly stolen checks, certainly cannot be recovered under this Rule. Ferreira has thus received from the Government all that he could possibly hope to recover as a part of his Rule 41(g) Motion.

As the Government did not contest Ferreira's ability to recover the telephone conversations that he made and turned over to the Government, this Court need not rule on whether tapes of telephone conversations made by a private citizen that are then turned over to the government constitute property that is recoverable under 41(g). Additionally, the Government's arguments concerning a privilege against the disclosure of the investigative materials that it did not voluntarily turn over to Ferreira need not be addressed, given that those materials fall outside the scope of Rule 41(g) and, therefore, Ferreira's Motion.

---

2. Although Ferreira, unlike the individuals in *Bova,* volunteered to be taped by the Government, this fact does not make those tapes Ferreira's property. The tapes and the equipment were the property of the Government, the tapes were made under the supervision and at the behest of the Government, and they have always been in the possession of the Government. Ferreira has failed to distinguish *Bova* in any meaningful way, and therefore the Court rejects his argument that the tapes made by the Government are his property, and as such are recoverable under Rule 41(g).