**UNITED STATES of America**

v.

**FRANK, Anthony Joseph.   (Two Cases)**

**Appeal of W.B. GIBSON COMPANY, an aggrieved third party.**

**Appeal of GIBSON & GIBSON, an Ohio Partnership.**

**Nos. 84–3606, 84–3607.**

United States Court of Appeals, Third Circuit.

Argued May 14, 1985.

Decided June 3, 1985.

Ralph E. Cascarilla (Argued), Cavitch, Familo and Durkin, Cleveland, Ohio, Fred Thieman, Pittsburgh, Pa., for W.B. Gibson.

Charles B. Jarrett, Jr. (Argued), Letson, Griffith, Woodall & Lavelle, Pittsburgh, Pa., for Gibson & Gibson.

David Pincus (Argued), Michael L. Paup, Chief Appellate Section, Carleton D. Powell, Glenn L. Archer, Jr., Asst. U.S. Atty. Gen., U.S. Dept. of Justice, Tax Div., Washington, D.C., Paul J. Brysh, U.S. Atty.'s Office, Pittsburgh, Pa., for appellee; J. Alan Johnson, U.S. Atty., of counsel.

Before HUNTER, SLOVITER, Circuit Judges, and COHEN,* District Judge.

**OPINION OF THE COURT**

JAMES HUNTER, III, Circuit Judge.

The issue in this case is whether the district court had jurisdiction to make a determination as to the entitlement to $250,000 in proceeds from a check held as evidence in a bribery prosecution. Because we believe that on the facts of this case the district court retained authority over the check even though the check was converted to cash by the Internal Revenue Service ("IRS"), we reverse and remand for proceedings consistent with this opinion.

---

* Honorable Mitchell H. Cohen, United States District Judge for the District of New Jersey, sitting   by designation.

The facts of this case are undisputed. The IRS brought a federal criminal tax prosecution against Anthony J. Frank and two of his closely-held corporations, Brimar Construction Company ("Brimar") and Antone Construction Co. ("Antone"). In April of 1983, Mr. Frank began to negotiate with Revenue Officer Quigley, and eventually made an offer to settle with the IRS for $250,000.

During the course of the negotiation, however, Agent Quigley became suspicious of Mr. Frank's intentions, and anticipated that a bribe offer would be forthcoming from Mr. Frank. Agent Quigley reported this to his superiors and conducted all further negotiations while wired for sound.

Frank did, in fact, give Agent Quigley an Oldsmobile. As part of his continued investigation of the bribery, however, Agent Quigley pretended to come to an understanding with Mr. Frank as to the delivery of a check for $250,000 to the IRS, in exchange for a clause in the settlement agreement releasing all other parties as well as Mr. Frank from any past tax obligations.

On June 12, 1983, Mr. Frank met with Agent Quigley and finalized the "agreement." From the beginning, however, Mr. Quigley had neither the authority nor the intent to settle Mr. Frank's tax liabilities for the $250,000. Thus, when Mr. Frank handed over the check, Mr. Quigley sprang the trap and Mr. Frank was arrested for bribery. For reasons not here relevant, the district court granted Mr. Frank's motion for judgment of acquittal in the criminal case.

We come, then, to the money. After the Frank acquittal, Gibson and Gibson and W.B. Gibson filed motions for return of the check, asserting that the $250,000 in fact belonged to them.[1] In their motion, the Gibson entities argued that the district court had the authority either under Federal Rule of Criminal Procedure 41(e), or the court's ancillary jurisdiction over evidence, to order the money returned to the court. The district court rejected the Gibson contention and held that it lacked jurisdiction to entertain the motion, taking the position that it was powerless to order the money returned once the evidence was converted to cash proceeds. We now reverse.

At the outset, it is important to remember how the IRS got the money. The $250,000 check was turned over by Frank on the representation of Agent Quigley that the IRS would deliver a final agreement releasing Frank and all third parties from liability. The delivery of the check was the cornerstone for Frank's arrest for bribery. The $250,000 check was, by definition, evidential, and it never lost its evidential characteristic, even though the IRS converted the evidence to cash proceeds.

Because the evidential character of the check may be traced through to its proceeds, it is clear that the district court had jurisdiction in this case to order the proceeds returned to the court for a determination as to entitlement to the proceeds. In *United States v. Premises Known as 608 Taylor Avenue*, 584 F.2d 1297, 1302 (3d Cir.1978), we held that a court has the inherent power to order evidence returned at the conclusion of criminal proceedings,

1. Gibson's claim can be summarized as follows: W.B. Gibson had entered into a joint venture with Brimar in 1975 as a sub-contractor for certain work at Fort Leonard Wood, Missouri, under a contract with the Army Corps of Engineers, with Titan Central States Construction Corporation ("Titan"), another Frank company (against which IRS had a large uncollected tax levy). There were construction problems and financial difficulties and Brimar left the project in November of 1977. Brimar then entered into another joint venture with Gibson and Gibson. Under the terms of this joint venture, Gibson and Gibson would undertake to complete Brimar's responsibility under the first joint venture. Brimar-Gibson joint venture sustained losses and claimed reimbursement from the Army Corps of Engineers in the amount of $490,000. This money was put into an escrow account established between Brimar and Titan. Gibson had a voice in the disbursement of funds from the account and the money was to stay in the account until the tax assessments against Brimar and Frank were resolved.

We need not concern ourselves with the convolutions of these arrangements except to note that the $250,000, which is the subject of the instant dispute, came from the escrow fund.

unless the evidence is subject to forfeiture. Because Frank was acquitted, there is obviously no question of forfeiture, and the IRS was obligated to return the check, without conversion, at the end of the proceedings.

Although the IRS argues that the evidential character of the check was negated when it simply converted the check to cash proceeds and placed those proceeds in the Treasury, such a position is untenable. The IRS, merely by converting the form of evidence, may not frustrate the district court's authority to control the disposition of evidence used in a criminal prosecution. For these reasons, we hold that the district court does have jurisdiction to determine who is entitled to the check's proceeds, and we reverse and remand for proceedings consistent with the opinion.